United States District Court
District of Connecticut
FILED AT NEW HAVEN

April 27, 20 23

By S. Santos
Deputy Clerk

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF CELLULAR DEVICES | Case No. 3:23-mj-398 (MEG) <br><br> **Filed Under Seal** |

# AFFIDAVIT

I, Matthew Lennon, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I am a law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18 of the Unites States Code; that is, an officer of the United States who is empowered by law to conduct investigations and to make arrests for federal felony offenses.

2. I make this affidavit in support of applications for search warrants for four (4) cellular telephones that are currently in law enforcement possession following the execution of state search warrants on April 13, 2023. The cellular telephones (collectively referred to as the "Target Telephones") are described in Attachment A, incorporated herein, and as follows:

   a. One black damaged Apple iPhone in a case (Target Telephone-1);

   b. One black damaged Apple iPhone in case (Target Telephone-2);

   c. One silver damaged Apple iPhone in case (Target Telephone-3); and

   d. One black Apple iPhone in a case (Target Telephone-4).

3. I respectfully submit that there is probable cause to believe that the Target Telephones will contain evidence that Hussani FOOTE and others have committed violations of federal law, specifically violations of Title 21, United States Code, § 841(a)(1) (possession with the intent to distribute narcotics); Title 21, United States Code § 843(b) (use of a communication device to facilitate a drug felony); Title 21 United States Code § 846 (conspiracy to possess with

the intent to distribute narcotics); Title 18, United States Code, § 922(g) (possession of a firearm by a prohibited person) (hereafter referred to as the "Target Offenses"), and thus, I seek search warrants to search each of the Target Telephones for evidence of the Target Offenses as described in Attachment B, incorporated herein.

4. I am employed as a detective with the Waterbury Police Department ("WPD"), located in Waterbury, Connecticut. I have been employed by the WPD for approximately 12 years. Prior to my employment with the WPD, I was employed by the United States Border Patrol, as a Border Patrol Agent, from January 2009 to January 2011. I was trained as a police officer at the Waterbury Police Academy. I have received instruction relative to conducting drug investigations while attending in-service training classes.

5. I am currently assigned to the Drug Enforcement Administration ("DEA"), New Haven District Office ("NHDO"), as a Task Force Officer ("TFO"). I have been assigned to the DEA as a TFO since March 2019. In my capacity as a TFO with the DEA, I am a participating member of the Organized Crime Drug Enforcement Task Force ("Task Force"), which is comprised of personnel from federal, state, and local law enforcement agencies.

6. As a DEA TFO, I have directed, conducted, and participated in many criminal investigations of various federal laws, narcotics and firearm investigations. During the course of these investigations, I have worked together with state and local law enforcement agencies to arrest the individuals responsible for criminal offenses. I have participated in numerous investigations involving individuals suspected of narcotics and firearm offenses, and have written, obtained and coordinated the execution of search and arrest warrants pertaining to individuals involved in federal offenses. I have prepared numerous affidavits in support of applications for search and arrest warrants which have resulted in orders being issued by judges.

7. My participation in these investigations has included debriefing cooperating sources and drug distributors, as well as other local, state and federal law enforcement officers, regarding the manner and means employed by narcotics traffickers, including the manner in which narcotics traffickers obtain, store, manufacture, transport, package and distribute their illegal drugs, finance their distribution operations, and conceal, transport, and launder the corresponding drug proceeds.

8. Based upon my experience and training, I am familiar with the practices employed by narcotics traffickers to secrete their drugs, drug proceeds, and records relating to drug trafficking in an effort to avoid detection. I know that drug traffickers, particularly drug traffickers who operate a reasonably high level, often maintain and/or utilize multiple premises, each with a specific purpose, to facilitate their drug trafficking organization's operational interests as well as to protect their interests from their competition and elude law enforcement.

9. I know that drug traffickers, particularly those who distribute a high volume of drugs and those who distribute drugs on a daily basis or with frequency, often store cash drug proceeds and records relating to their drug trafficking and drug proceeds, including but not limited to records regarding the disposition, transportation, or transfer of drug proceeds, as well as records regarding drug debts or records pertaining to the identity of coconspirators, within their residences or other structures over which they can exercise complete dominion and control and which they can attempt to secure with surveillance cameras or other security measure.

10. I am also familiar with the manner and means by which narcotics traffickers communicate, as well as the devices commonly utilized by them, and those methods employed by narcotics traffickers in an effort to avoid detection by law enforcement.

11. I know that narcotics traffickers often use cellular telephones, and often speak to one another using coded, cryptic or slang words and phrases, in the belief that, by doing so, they can thwart the efforts of law enforcement to identify them and their activities and to seize their drugs and/or assets.

12. I am familiar with the slang and coded conversation employed in the narcotics trade, and I know the wholesale and retail value and pricing associated with various controlled substances, including heroin, cocaine, cocaine base, oxycodone, and marijuana, and the manner in which these controlled substances are commonly packaged for wholesale and retail, i.e. "street-level," distribution.

13. I know that drug traffickers frequently have access to several cellular telephones, and that they periodically use newly acquired cellular telephones and sometimes re-activate a cellular telephone that has not been used for a period of time. I also know that narcotics traffickers sometimes use cellular telephones subscribed to by other persons and pre-paid cellular telephones that require the purchaser to provide little or no identifying information to purchase, activate and utilize, which is done in an effort to avoid detection and thwart the efforts of law enforcement.

14. Based on my training and experience, and consultation with, and information from, other law enforcement sources, including sources with expertise pertaining to the features and functionality of cellular telephones and computers, I know the following information tends to exist on wireless telephones, including wireless telephones utilized by those engaged in narcotics trafficking activities:

    a. the telephone call number and other identifiers (ESN number, IMSI, IMEI, MEID, and SIM card number) associated with said device/s;

b. call logs/histories, numbers, digits, stored messages (voice and/or text), letters, symbols, data, information, and images and videos stored in the memory of said device/s;

c. descriptions of time, date, locations, items, or events showing or tending to show the commission of, or connecting or tending to connect a person to, the above-described offenses;

d. records which tend to demonstrate ownership and use of the phone, and identification bearing the name or photograph of any person, telephone-books, address books, date books, calendars, personal files, and photographs of persons contained in the phone;

e. information showing or tending to show the identity of the maker or user of the data and information contained in the phone, such as passwords, sign-on codes, and program design;

f. GPS coordinates, waypoints, destinations, addresses, and location search parameters associated with GPS navigation software;

g. saved searches, locations, and route history in the memory of said device/s; and,

h. internet browsing history, to include, internet searches in the memory of said device/s.

15. I am familiar with the facts and circumstances of the investigation as a result of my personal participation in the investigation; from discussions with TFO/agents of the DEA and other law enforcement personnel; from information provided by witnesses involved in the investigation; and from my review of records, reports and affidavits relating to the investigation. Unless

otherwise noted, wherever in this affidavit I assert that a statement was made, the information was provided by another law enforcement officer or witness who may have had either direct or hearsay knowledge of that statement and to whom I or others have spoken or whose reports I have read and reviewed. Such statements are among many statements made by others and are stated in substance and in part unless otherwise indicated. The information contained in this affidavit is based on this familiarity, and upon information which I have reviewed and determined to be accurate and reliable. Since this affidavit is being submitted for the limited purpose of obtaining search warrants for cellular devices, I have not included each and every act known to me concerning this investigation. I have set forth only the facts that I believe are essential to establish the foundation necessary to support the issuance of the requested court orders.

## **PROBABLE CAUSE**

16. On April 13, 2023, law enforcement executed state search warrants for Foote's person (nothing recovered), residence, and vehicle (Infiniti Q70). At the time law enforcement executed the warrants, Foote, along with a female, was in a bedroom inside his residence. Foote stated that the bedroom was his bedroom and that the female stayed in the bedroom only sometimes. From the residence, law enforcement recovered the following items from Foote's bedroom:

    a. Three digital scales;

    b. $27,713 (including additional cash inside a hooded sweatshirt in the basement);

    c. A box of sandwich baggies (nightstand)

d. Target Telephone-1 (bed)[1]

e. Connecticut ID for Foote (bed)

f. Approximately 10 white glassine baggies, each stamped "Prime," and each containing tan powder (shoe box under bed); and

g. The key to the Infiniti Q70 (nightstand).

17. From the Infiniti Q70, which was parked in the driveway of Foote's residence, law enforcement recovered:

a. $95,502;

b. Two digital scales;

c. Suspected cocaine (6.4 gg);

d. Suspected crack cocaine (160 gg);

e. Approximately 35,466 glassine baggies each containing suspected heroin/fentanyl bearing "Prime," "Tinder," "Telsa," an unknown red stamp and an unknown blue stamp (estimated 886 net grams at 0.025 grams per baggie);

f. Target Telephone-2;

g. Target Telephone-3;

h. Target Telephone-4;

i. One Glock 19, Gen. 5, 9mm handgun with four live rounds of ammunition, serial number BUYM138 (located in trunk);

j. Mail parcel addressed to Foot;

---

[1] A second phone was located in the bedroom. The female had a phone in her possession that was not seized.

k. 41 small plastic containers each containing a crystal-like substance (24.2 gg).

18. Field tests were conducted and returned a positive reaction indicating the presence of opiates and fentanyl for the suspected heroin/fentanyl, cocaine for the suspected cocaine base, and amphetamines for the crystal-like substance. Aside from the firearm, which was in the trunk, the other items seized from the vehicle were located within the passenger compartment. The narcotics were separated into multiple shopping bags and then subdivided. From my training and experience, I recognize the narcotics seized from FOOTE's residence and vehicle to be consistent with narcotics packaged for street-level redistribution. I am also aware that during the investigation preceding the state search warrant, only FOOTE was observed operating the Infiniti Q70 on a regular basis. Given the seizures described above, FOOTE appears to have been using the Infiniti Q70 to not only distribute narcotics but also to store the narcotics and narcotics proceeds, activities he protected by use of the firearm also stored therein, which have a considerable street value.

19. FOOTE was also observed utilizing a cellular telephone to arrange narcotics transactions and the information that information pertaining to FOOTE's purported narcotics distribution was received in March 2023. In late March 2023, law enforcement conducted two controlled purchases of suspected narcotics from FOOTE prior to obtaining the search warrants that led to the recovery of the evidence set forth above. As set forth above, I also know from my training and experience that narcotics traffickers will utilize multiple cellphones to conduct narcotics transactions, replacing and/or switching out cellular devices in an effort to thwart law enforcement detection and limit their criminal exposure. I also know from my training and experience that narcotics traffickers, particularly high-level narcotics traffickers, will use multiple cellular telephones to compartmentalize narcotic-related contacts. For instance, narcotics

traffickers will use one phone for narcotics customers, another phone for narcotic sources, and still another phone for personal use. I also know that in such instances narcotics traffickers will seek to separate convictions and isolate phone usage to only particular callers. I also know, however, that such separation attempts are not always effective and that sometimes the narcotics traffickers "clean" phone will contain inadvertent cross over communications with callers who are supposed to contact the traffickers via a "dirty" phone, and/or the "clean" phone will contain information such as identity information that can also shed light on the trafficker's involvement in narcotics trafficking. I also know that narcotics traffickers will seek to damage "dirty" phones in an effort to thwart subsequent attempts to access the phone to obtain information from the device but that forensic examination of such a device has the potential to nonetheless recover information from the device.

20. From my review of FOOTE's criminal history, I know that he has previously been convicted of a felony. He has three prior convictions for possession with intent to distribute from 2020, 2018, and 2017 respectively. For his 2020 conviction, he received a time-served sentence of 30 months in jail and one year probation. For the 2018 conviction, he received a four-year suspended sentence and three years' probation. For the 2017 conviction, he received a three-year suspended sentence and two years' probation.

21. Based on the foregoing, there is probable cause to believe, and I do believe, that the Target Telephones may contain evidence of the Target Offenses. Accordingly, I respectfully seek the requested authorizations to access the phones described in Attachment A for the evidence set forth in Attachment B (incorporated).

## GENERAL INFORMATION REGARDING SEARCHING ELECTRONIC DEVICE

22. Based on my training and experience, and consultation with, and information from other law enforcement sources, including sources with expertise pertaining to the features and functionality of cellular telephones and computers, I know the following information tends to exist on wireless telephones, including wireless telephones utilized by those engaged in narcotics trafficking activities:

a. the telephone call number and other identifiers (ESN number, IMSI, IMEI, MEID, and SIM card number) associated with said device/s;

b. call logs/histories, numbers, digits, stored messages (voice and/or text), letters, symbols, data, information, and images and videos stored in the memory of said device/s;

c. descriptions of time, date, locations, items, or events showing or tending to show the commission of, or connecting or tending to connect a person to, the above-described offenses;

d. records which tend to demonstrate ownership and use of the phone, and identification bearing the name or photograph of any person, telephone-books, address books, date books, calendars, personal files, and photographs of persons contained in the phone;

e. information showing or tending to show the identity of the maker or user of the data and information contained in the phone, such as passwords, sign-on codes, and program design;

f. GPS coordinates, waypoints, destinations, addresses, and location search parameters associated with GPS navigation software;

g. saved searches, locations, and route history in the memory of said device/s; and

h. internet browsing history, to include, internet searches in the memory of said devices.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

23. Based on my knowledge, training, and experience, and information from other law enforcement sources, including sources with expertise pertaining to the features and functionality of cellular telephones and computers, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period on the device. This information can sometimes be recovered with forensics tools.

24. *Forensic evidence.* This application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the **Target Telephones** were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence might be on the **Target Telephones** because:

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw

conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d.  The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.  Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

25.  *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the **Target Telephones** consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant. Based on the above stated factual details of the investigation, there is probable cause to believe, and I do believe, that the **Target Telephones** contains stored electronic information, including telephone numbers, digits, names, text messages, photographs, videos, identifying information such as telephone numbers and serial numbers, the originating

telephone numbers, and other electronic information as outlined in Attachment B that will assist law enforcement in this investigation and which is evidence of the violations of the above.

Respectfully submitted,

_____
MATTHEW LENNON
DEA TFO

Subscribed and sworn to me over the telephone or other reliable means on April 27th, 2023

_____
HON. MARIA E. GARCIA
UNITED STATES MAGISTRATE JUDGE

# ATTACHMENT A

## Property To Be Searched

Cellular telephones, more particularly described below and collectively referred to as the "Target Telephones," which were seized on or about April 13, 2023, pursuant to state search warrants, and which are presently in the custody of the law enforcement.

This warrant authorizes the forensic examination of the Target Telephones for the purpose of identifying the electronically stored information described in Attachment B.

The Target Telephones are described as follows:

        a. One black damaged Apple iPhone in a case (Target Telephone-1);

        b. One black damaged Apple iPhone in case (Target Telephone-2);

        c. One silver damaged Apple iPhone in case (Target Telephone-3); and

        d. One black iPhone with a case (Target Telephone-4).

# ATTACHMENT B

Particular Things to be Seized

All records and information contained in the Target Telephones violations of federal law, specifically, violations of Title 21, United States Code, § 841(a)(1) (possession with the intent to distribute narcotics); Title 21 United States Code § 846 (conspiracy to possess with the intent to distribute narcotics); Title 21, United States Code § 843(b) (use of a communication device to facilitate a drug felony); Title 18, United States Code, § 922(g) (possession of a Firearm by a prohibited person) (hereafter referred to as the "Target Offenses") by Hussani FOOTE and others, to include the following:

1. the telephone number, ESN number, serial number, and SIM card number of the telephone;

2. the numbers, digits, symbols, data, information, and images stored in the memory of the telephone;

3. stored messages (voice and/or text), notes, or letters from January 1, 2023 until April 13, 2023;

4. descriptions of time, date, locations, items, or events showing or tending to show the commission of, or connecting or tending to connect a person to the Target Offenses from January 1, 2023, until April 13, 2023;

5. any and all records, however created or stored, which tend to demonstrate ownership and use of the device/s, and identification bearing the name or photograph of any person, telephone-books, address books, date books, calendars, personal files, and photographs of persons contained in the telephone;

6. any and all evidence showing or tending to show the identity of the maker or user of the data and information contained in the telephone, such as passwords, sign-on codes, and program design;

7. GPS coordinates, waypoints, destinations, addresses, and location search parameters associated with GPS navigation software from January 1, 2023, until April 13, 2023;

8. saved searches, locations, and route history in the memory of said telephone from January 1, 2023, until April 13, 2023;

9. internet browsing history, to include, internet searches in the memory of the telephone from January 1, 2023, until April 13, 2023;

10. images and videos in the memory of the telephone from January 1, 2023, until April 13, 2023; and,

11. evidence of user attribution showing who used or owned the telephone at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

It is specifically authorized that stored electronic information, data, information and images contained in the above-described telephone may be reproduced by printing said stored electronic information or otherwise reproducing said stored electronic information, by converting said stored electronic information, or by copying said stored electronic information into storage in another device(s).

To the extent that the Target Devices contain removable storage media and/or other devices, examination of such removable media and/or devices is specifically authorized for the same evidence as described in this attachment.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the DEA may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.